# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DARRELL H. LEE, as Personal Representative
of HAROLD LEE, Deceased

        Plaintiff,

v.                                                                                  No. CV 15cv405 KG/KBM
                                                                                    No. CV 15cv510 KG/KBM
CITY OF GALLUP, a Municipal Corporation                                             Consolidated
of the State of New Mexico, et al.

        Defendants.

And

DARRELL H. LEE, as Personal Representative
of HAROLD LEE, Deceased

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Board of County Commissioners for

the County of McKinley, Genevieve Jackson, Bill Lee, and Sara A. Keelers' ("County

Defendants") Motion for Summary Judgment and Their Memorandum in Support Thereof

("County Motion for Summary Judgment"), filed August 16, 2016.  (Doc. 87).  Plaintiff Darrell

Lee ("Plaintiff"), as personal representative to the estate of Harold Lee, filed a response on

September 27, 2016, and the County Defendants filed a reply on October 12, 2016.  (Docs. 105,

110).

Also before the Court is Defendant City of Gallup, Jackie McKinney, George Kozeliski, and Patty Holland's ("City Defendants") Motion for Summary Judgment ("City Motion for Summary Judgment"), filed on August 22, 2016. (Doc. 90). Plaintiff filed a response on September 27, 2016, and the City Defendants filed a reply on October 10, 2017. (Docs. 104, 108). Having reviewed the motions, the accompanying briefs, and relevant law, the Court GRANTS both the County Motion for Summary Judgment and the City Motion for Summary Judgment.

*I. Background*

This case concerns the death of Harold Lee ("Mr. Lee") at the Gallup Detox Facility ("GDF"). Plaintiff originally filed his Complaint to Recover Damages for Personal Injuries and Wrongful Death ("Complaint") on March 8, 2015, in the Eleventh Judicial District Court of the State of New Mexico. (Docs. 1-2, 1-3). The County Defendants removed the case to this Court on May 12, 2015. (Doc. 1).

The Complaint alleges six counts. In Counts I through V, Plaintiff brings state court claims, including New Mexico Tort Claims Act ("NMTCA") claims against the City and County Defendants (together, "Defendants") for partnership, unincorporated association, negligence, *ultra vires*, and civil conspiracy. (Doc. 1-2, 1-3). Finally, in Count VI, Plaintiff brings a 42 U.S.C. § 1983 claim for violations of Mr. Lee's civil rights, alleging both municipal liability against the City Defendants and individual liability for City Defendant Jackie McKinney[1] ("Defendant McKinney"). (Doc. 1-3). Defendants now move for summary judgment on all

---

[1] In Plaintiff's Partial Response to County Defendant's Motion to Dismiss, Plaintiff stated that he did not bring any Section 1983 claims against the County Defendants and agreed to dismiss any Section 1983 claims that appear to include the County Defendants. (Doc. 21) at 2. The Court granted a Partial Order of Dismissal on August 11, 2015, and formally dismissed any Section 1983 claims against the County Defendants. (Doc. 27).

claims stating that there are no genuine issues of material fact. Plaintiff opposes the motions in their entirety.

*II. Standard of Review*

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). A dispute over a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmoving party's favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

*III. Facts and Reasonable Inferences Viewed in the Light Most Favorable to Plaintiff*[2]

The City of Gallup and McKinley County signed a Memorandum of Agreement ("MOA") with the Navajo Nation's Department of Behavioral Services to operate the GDF. (Doc. 1-3) at 14-18. According to the MOA, the purpose of the agreement was "to provide financial resources to ensure comprehensive case management for individuals who are impacted by alcohol substance abuse as well as provide prevention, treatment and after care services to individuals." *Id.* at 15. The City of Gallup and McKinley County agreed to lease property to the Navajo Nation to provide "detox and rehabilitative services." *Id.* The City of Gallup intended to enter into a Lease Agreement with the Navajo Nation; instead, the Navajo Nation proposed an

---

[2] Unless otherwise noted, the summary of material facts is undisputed.

MOA between the City of Gallup, McKinley County, and the Navajo Nation, which the parties ultimately agreed to sign. (Doc. 90-2) at ¶ 5.

The stated purposes of the agreement between Defendants and the Navajo Nation were to (1) "provide financial resources to ensure comprehensive case management for individuals who are impacted by alcohol and substance abuse[;]" (2) maintain "continuity of comprehensive service[;]" and (3) for Defendants to lease property to the Navajo Nation. (Doc. 1-3) at 15. Under the MOA, the City of Gallup agreed to provide $320,000 to bring the GDF building up to the appropriate standards and to maintain the exterior of the building. (Doc. 1-3) at 15. For GDF's annual funding, the City of Gallup and the County of McKinley agreed to contribute 10% each from the liquor excise taxes collected annually on liquor sales in McKinley County. *Id.* The Navajo Nation was required to pay $1.00 per year for use of the building and was responsible for "the provision of detox and after-care treatment to individuals at the [GDF]." *Id.*

The Navajo Nation hired employees to run the facility pursuant to the Navajo Preference in Employment Act. (Doc. 90-3) at 16:10-18; (Doc. 90-5) at 96:3-7. Except to address maintenance issues, City of Gallup employees were not involved in the day-to-day operations of GDF. (Doc. 90-1) at 18:1-23. Vera John, the Clinical Director of GDF, drafted the Detox Admission Criteria which the staff at GDF used to admit individuals. (Doc. 90-6) at 48:11-14. Medical services were not provided at GDF, and if individuals required medical services, they were sent to other facilities. (Doc. 90-3) at 18:18-19:4, 19:14-18, 23:13-14. The Navajo Nation operated GDF from January 1, 2014, to October 2, 2015, which includes the time period relevant to this lawsuit. (Doc. 19-6) at 7:12-14.

On June 14, 2014, New Mexico State Police Patrolman Mark Fambrough picked up Mr. Lee from the median on Interstate 40 and transported him to GDF. [3] (Doc. 1-2) at ¶ 22; (Doc. 90-8). When Mr. Lee was brought to GDF, his blood alcohol level was measured in excess of .48. (Doc. 104-9) at 21:7-11. According to GDF policy, an individual with a blood alcohol level greater than .45 is taken to a hospital or the emergency room to be evaluated by a physician. (Doc. 105-5) at 25:3-25. Instead, GDF employees placed Mr. Lee in the general population holding area upon admittance to GDF. *Id.* at 21:12-25. Mr. Lee died at GDF on June 15, 2014, of acute ethanol toxicity. (Doc. 104-6).

*IV. Discussion*

Defendants move for summary judgment on all of Plaintiffs' claims. The Court will address each claim in turn.

A. *State Law Claims*

1. *Count I: Partnership*

Plaintiff alleges that Defendants formed a partnership with the Navajo Nation and are; therefore, liable for the tortious acts of the Navajo Nation that were committed in furtherance of the partnership. (Doc. 1-2) at 5 ¶¶ 37, 39. As evidence of a partnership, Plaintiff points to the MOA, which states that "[t]his Agreement establishes a partnership between the Navajo Nation, the City of Gallup and McKinley County." (Doc. 1-3) at 15. Defendants argue that the use of the term "partnership" in the MOA did not create a legal partnership between the parties. (Doc. 87) at 6; (Doc. 90) at 7-9.

---

[3] The City Defendants argue that the circumstances and cause of Mr. Lee's death are not relevant facts because the City was not involved in the operation of GDF. (Doc. 108 at 4). Because Plaintiff claims that Defendants' negligence contributed to the death of Mr. Lee, the Court finds that the circumstances and cause of Mr. Lee's death are relevant to the disposition of these motions for summary judgment.

In New Mexico, a partnership is defined as "an association of two or more persons to carry on as co-owners of a business for profit." NMSA 1978, § 54-1A-101(6) (Repl. Pamp. 2007). The Supreme Court of New Mexico has stated that "a pattern of conduct, such as the sharing of profits and expenses of the business, filing of partnership tax forms, previous execution of contracts on behalf of the partnership, and control of a partnership bank account will suffice to show the creation of a partnership relationship." *Dotson v. Grice*, 1982-NMSC-072, ¶ 6, 647 P.2d 409.

Here, although the parties to the MOA labeled the relationship a "partnership," the terms of the relationship do not establish a partnership as defined by New Mexico law. The purpose of the relationship between Defendants and the Navajo Nation was to (1) "provide financial resources to ensure comprehensive case management for individuals who are impacted by alcohol and substance abuse[;]" (2) maintain "continuity of comprehensive service[;]" and (3) for Defendants to lease property to the Navajo Nation. (Doc. 1-3) at 15. The relationship was not formed to carry on a business for profit nor did employees for Defendants participate in the operation of GDF. The MOA further does not establish that the parties shared profits or expenses, file partnership tax forms, execute contracts on behalf of each other, or control a bank account. Because the parties do not meet the New Mexico definition of a partnership or the characteristics of a "partnership" as described by the Tenth Circuit, a partnership was not formed between the Defendants and the Navajo Nation based on the use of the term partnership in the MOA. Therefore, Plaintiff's partnership argument is without merit.

Alternatively, Plaintiff argues that because the Defendants and the Navajo Nation "intended to create a partnership" and "called themselves a partnership, . . . they should be estopped from denying liability as partners, whatever their actual or legal status." (Docs. 104,

105) at 6 (citing *Cheesecake Factory, Inc. v. Baines*, 1998-NMCA-120, 964 P.2d 183). In

*Cheesecake Factory*, the New Mexico Court of Appeals addressed the term "partner by

estoppel," which is a term that was defined in a section of the New Mexico statutes that was

repealed in 1997. *Cheesecake Factory*, 1998-NMCA-120, ¶ 10; NMSA 1978, § 54-16 (Repealed

1997). A partnership by estoppel is formed

> [w]hen a person, by words spoken or written or by conduct, represents himself . . .
> as a partner in an existing partnership or with one or more persons not actual
> partners, he is liable to any such person to whom such representation has been
> made, who has, on the faith of such representation, given credit to the actual or
> apparent partnership.

*Id*. Based on the statute, an individual would be liable to individuals that relied on the apparent

partnership. *Id*. Here, putting aside the fact that this section of the statute has been repealed,

Plaintiff does not explain how he relied on the partnership. Thus, partnership by estoppel does

not apply in this case.

Plaintiff also asks the Court to treat the relationship between Defendants and the Navajo

Nation as a *de facto* partnership. *Id*. (citing *Bencoe v. Bencoe*, 1956-NMSC-126, 305 P.2d 370).

Plaintiff, however, does not argue why the relationship should be treated as a *de facto*

partnership. Further, the case he cites, *Bencoe*, concerned a contingent partnership "where the

agreement [between the parties] contemplated the formation of a partnership at some future time

or upon the happening of some future contingency." That is not the case here. In sum, the

undisputed material facts do not show that, as a legal matter, a partnership between Defendants

and the Navajo Nation existed. Therefore, Defendants are entitled to summary judgment on

Count I.

### 2. *Count II: Unincorporated Association*

Plaintiff argues that the MOA meets the requirements for the formation of an

unincorporated association.  NMSA 1978, § 53-10-1 (Repl. Pamp. 2001).  According to the statute:

> [w]henever two or more persons shall desire to form an association for the promotion of their mutual pleasure or recreation of any hunting, fishing, camping, golf, country club, or association for similar purpose, or an association not for the individual profit of the members thereof, and without incorporating the same as a corporation  . . . the said persons or members desiring to form such an association or club may file in the office of the county clerk of the county in which it may maintain its headquarters and pursue its objects and purposes, a statement containing the  name of such association, its objects and purposes, the names and residences of the persons forming such association, together with a copy of its articles of association and any rules and/or regulations governing the transactions of its objects and purposes and prescribing the terms by which its members may maintain or cease their membership therein.

Plaintiff argues that the Defendants formed an unincorporated association with the Navajo Nation because the Defendants assert that they did not have any profit motive and Plaintiffs state that the MOA was filed with the County Clerk and the MOA sets forth the other requirements of the statute.  (Doc. 104) at 7; (Doc. 105) at 6.

The MOA includes the signature of the County Clerk, who appears to have attested to the execution of the document; however, there is no evidence that the document was actually filed with the County Clerk.  (*See* Doc. 1-3) at 18.  Assuming arguendo the MOA was filed with the County Clerk, it nevertheless does not meet the requirements of an unincorporated association because it does not contain articles of association, or rules or regulations governing transactions, nor does it describe the terms by which members could leave the association.  Plaintiff summarily concluded that the MOA meets the requirements for an unincorporated association without providing any facts to support that conclusion.  Because the undisputed facts demonstrate that the MOA does not meet the requirements for an unincorporated association, Defendants are entitled to summary judgment on Count II as a matter of law.

8

### 3.  Count III: Negligence

Plaintiff brings a negligence claim under the NMTCA.  (Doc. 1-2) at 15 – (Doc. 1-3) at 2.
The NMTCA was enacted to "compensate those injured by the negligence of public employees
and to impose duties of reasonable care," while at the same time limiting "governmental liability
so that [the] 'government should not have the duty to do everything that might be done.'"  *Cobos
v. Doña Ana Cnty. Hous. Auth.*, 1998-NMSC-049, ¶ 6, 970 P.2d 1143.  The NMTCA balances
these two important public policies "by providing immunity from tort liability for governmental
entities and public employees acting within the scope of their duties, except as that immunity is
waived."  *Rayos v. State ex rel. N.M. Dep't of Corrs., Adult Prob. & Parole Div.*, 2014-NMCA-
103, ¶ 6, 336 P.3d 428.  If no specific waiver can be found in the NMTCA, a plaintiff's
complaint against a public employee or a governmental entity must be dismissed.  *Williams v.
Bd. of Regents of Univ. of N.M.*, 20 F. Supp. 3d 1177, 1186 (D.N.M. 2014) (citing *Begay v. State*,
1985-NMCA-117, ¶ 12, 723 P.2d 252, *rev'd on other grounds Smialek v. Begay*, 1986-NMSC-
049, 721 P.2d 1306).  Plaintiff's negligence claim is based on waivers of immunity for the
"operation and maintenance of buildings" and the operation of a medical facility.  NMSA 1978,
§§ 41-4-6 (Cum. Supp. 2015), 41-4-9 (Repl. Pamp. 1996).

#### a.  NMTCA Building Waiver

Plaintiff first bases his negligence claim on a waiver of immunity for the "operation and
maintenance of buildings."  Specifically, the immunity granted pursuant to the NMTCA

> does not apply to liability for damages resulting from bodily injury, wrongful
> death or property damage caused by the negligence of public employees while
> acting within the scope of their duties in the operation or maintenance of any
> building, public park, machinery, equipment or furnishings.

NMSA § 41-4-6. This waiver applies to the operation and maintenance of the physical aspects of a building, as well as the "safety policies necessary to protect the people who use the building." *Sean E. v. Fraga*, 2008 WL 8937906, at *10 (D.N.M.) (unpublished).

Plaintiff contends that Defendants "were squarely and irrevocably involved in the 'operation of a building,'" as Defendants chose the Navajo Nation to operate GDF, which it allegedly did in a negligent manner. (Doc. 104) at 7; (Doc. 105) at 6. Specifically, Plaintiff maintains that the Defendants funded GDF and operated GDF in an unsafe manner, which led directly to the death of Mr. Lee. (Doc. 104) at 8; (Doc. 105) at 6-7. Plaintiff reiterates that his claim is for negligent operation and not negligent supervision, which is appropriate as there is no waiver of liability for negligent supervision under Section 41-4-6. (Doc. 104) at 7; (Doc. 105) at 6; *see Lessen v. City of Albuquerque*, 2008-NMCA-085, ¶ 21, 187 P.3d 179 (quoting *Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 16, 141 P.3d 1259).

Based on the terms of the MOA, Defendants leased property to the Navajo Nation and the City Defendants agreed to maintain the exterior of the building. (Doc. 1-3) at 16. The Supreme Court of New Mexico has recognized the duty of a landlord to maintain its common grounds in order to ensure reasonable safety for the general public. *Espinoza v. Town of Taos*, 1995-NMSC-070, ¶ 10, 905 P.2d 718 (citing *Bober v. N.M. State Fair*, 1991-NMSC-031, ¶¶ 18, 27, 808 P.2d 614). However, Plaintiff is not arguing that a defect in or condition of the building or grounds resulted in Mr. Lee's death.

Plaintiff relies instead on *Upton* for the proposition that the waiver in Section 41-4-6 "includes safety policies necessary to protect the people who use the building." (Doc. 104) at 6; (Doc. 105) at 8. In *Upton*, parents sued a school because their daughter died

after suffering an asthma attack when a substitute physical education teacher required her to participate in strenuous exercise. 2006-NMSC-040, ¶ 10, 141 P.3d 1259. Plaintiff claimed that the School District operated the girl's school "in a manner that put her and other similarly situated students at risk." *Id*. The New Mexico Supreme Court held the School District's failure to follow procedures that were established for at-risk students fell within the Section 41-4-6 waiver, because "a school simply cannot operate in a safe, reasonable, and prudent manner without affording, at the very least, the health and safety services that students have been promised." *Id*. at ¶ 13.

Here, GDF did not follow its own policy to send individuals with a blood alcohol level over .45 to a hospital. However, the Defendants were not involved with drafting the policies and procedures utilized at GDF and were not involved in the day-to-day operation of GDF. While GDF may have "failed to follow through on its safety policies," the Defendants were not responsible for those policies or the implementation of those policies. *Id*. Furthermore, Section 41-4-6 did not waive immunity for Defendants because it was the Navajo Nation's operation of the detox facility "that gave rise to a duty of care" to Mr. Lee, "and not the existence" of the building itself, which was owned by Defendants. *C.H. v. Los Luna Sch. Bd. of Educ.*, 852 F. Supp. 2d 1344, 1353-54 (D.N.M. 2012) (citing *Espinoza*, 1995-NMSC-070). As such, the Court will grant summary judgment on the negligence claim based on Section 41-4-6, the operation of a building waiver.

### b. NMTCA Medical Facility Waiver

Plaintiff additionally bases his negligence claim on a waiver of immunity for the operation of medical facilities. The immunity granted pursuant to the NMTCA

> does not apply to liability for damages resulting from bodily injury, wrongful
> death[,] or property damage caused by the negligence of public employees while
> acting within the scope of their duties in the operation of any hospital, infirmary,
> mental institution, clinic, dispensary, medical care home[,] or like facilities.

NMSA 1978, § 41-4-9.

Plaintiff argues that despite the fact that GDF did not provide medical care, the purpose statements in the MOA and the nature of GDF make it a "like facilit[y]" as contemplated by Section 41-4-9. (Doc. 104) at 8; (Doc. 105) at 7. Plaintiff apparently cites *Upton* and *State v. Tsosie*, 2011-NMCA-115, 266 P.3d 34, without explanation, for the proposition that a detox center is a "like facility" under Section 41-4-9. *Upton* does not apply to the instant case because it dealt with a child who died at a school, not a medical facility. 2006-NMSC-040.

*Tsosie* is unpersuasive because the New Mexico Court of Appeals interpreted a criminal statute that also is not applicable to this case. *See* 2011-NMCA-115 (definition of health care facility under the statute for assault and battery on health care personnel). However, in *Redding v. City of Truth or Consequences,* the New Mexico Court of Appeals directly addressed the definition of medical facilities in Section 41-4-9. 1984-NMCA-132, ¶ 8, 693 P.2d 594. The Court stated that "Section 41-4-9 applies to the operation of facilities which provide medical care directly to people." *Id.* In finding that an animal control center was not a "like facility," the Court noted that "[t]he term 'or like facilities' as used in Section 41-4-9 follows a list of facilities starting with 'hospital' and ending with 'medical care home.' Webster's Third New Collegiate Dictionary (1973) defines 'like' as used here as 'the same or nearly the same.'" *Id.* at ¶ 9. Here, as Plaintiff admits, GDF did not provide any medical services and individuals who required medical services were sent to nearby hospitals. Under these circumstances, Section 41-4-9 does not waive immunity for Defendants because GDF did not operate as a medical facility. The

Court will, likewise, grant summary judgment on the negligence claim based on Section 41-4-9. Count III, therefore, is subjective to summary judgment in its entirety.

### 4. Count IV: Ultra Vires

In Count IV, Plaintiff asserts that the actions of Defendants are *ultra vires* under the New Mexico Procurement Code and Joint Powers Agreements Act. (Doc. 104) at 8-9; (Doc. 105) at 7-8. *Ultra vires* is used to argue that a municipality took action "beyond the scope of its statutory authority." *Mechem v. City of Santa Fe*, 1981-NMSC-104, ¶ 6, 634 P.2d 690.

Plaintiff argues that the MOA violates the New Mexico Procurement Code because Defendants did not issue a request for proposal before entering into the MOA. *Id.* (citing Gallup City Code, § 1-9-6, *et seq*.; NMSA 1978, § 13-1-111, *et seq*.). Both the New Mexico Procurement Code and the Gallup City Code require competitive sealed proposals for the procurement of "professional services." NMSA 1978, § 13-1-111 (Repl. Pamp. 2012); Gallup City Code, § 1-9-1. Both codes define professional services as "the services of architects, archeologists, engineers, surveyors, landscape architects, medical arts practitioners, scientists, management and system analysis, certified public accountants, registered public accountants, lawyers, psychologists, planners, researchers, construction managers and other persons or business providing similar professional services." NMSA 1978, § 13-1-76 (Repl. Pamp. 2012); Gallup City Code, § 1-9-2. It is up to the state purchasing agent to make a determination and finding of whether a "similar professional service" should be designated as a "professional service." 1.4.1.29(D) NMAC.

Here, Defendants did not request a finding as to whether GDF is a "professional service," so it is unclear if the MOA violates the New Mexico Procurement Code. Nevertheless, even if the MOA was outside the scope of Defendants' authority under the New Mexico Procurement

Code, Defendants are only liable if liability has been waived under the NMTCA. *See Cole v. City of Las Cruces*, 1983-NMSC-007, ¶ 16, 657 P.2d 629 (Under NMTCA, City not liable for injuries suffered by plaintiff resulting from natural gas explosion, even though natural gas plant operated outside of statutory limit). Although the MOA may be "beyond the statutory limitations imposed by" the Joint Powers Agreements Act ("JPAA"), Defendants are not deprived "of the exclusive right, remedy and obligation" of the NMTCA. *Id*. Since the Court found that Sections 41-4-6 and 41-4-9 do not waive liability for Defendants' actions, Defendants are not liable to Plaintiff for acts that were *ultra vires*.

Plaintiff also maintains that Defendants violated the JPAA because the Secretary of the New Mexico Department of Finance and Administration did not approve and sign the MOA. (Doc. 104) at 8; (Doc. 105) at 7. The JPAA allows "two or more public agencies by agreement [to] jointly exercise any power common to the contracting parties." NMSA 1978, § 11-1-3 (Repl. Pamp. 2010).

Although not stated explicitly, it appears that Plaintiff is arguing that the Defendants violated the JPAA by agreeing to provide 10% of their liquor excise taxes to the Navajo Nation to operate GDF. The Liquor Excise Tax Act requires "the governing body of a county" to "enter into a joint powers agreement with the governing body of the most populated municipality . . . to provide for the use and administration of" local liquor excise taxes. NMSA 1978, § 7-24-10.1(A) (Cum. Supp. 2015). The City Defendants argue that they entered into a joint powers agreement with the County Defendants for the allocation of the liquor excise taxes; however, they did not provide this agreement and Plaintiff is correct that the Secretary of the New Mexico Department of Finance and Administration did not sign the MOA, as required by the JPAA. (*See* Doc. 1-3) at 18.

As with the New Mexico Procurement Code argument, Defendants would only be liable for violating the JPAA if immunity was waived. Because the Court found Sections 41-4-6 and 41-4-9 do not waive immunity for Defendants' actions, the Court will grant Defendants'' Motions for Summary Judgment on the Count IV claims for *ultra vires*.

  *5.  Count V: Civil Conspiracy*

Count V of the Complaint alleges a civil conspiracy between Defendants and the Navajo Nation to violate the JPAA, the New Mexico Procurement Act, and the laws of the State of New Mexico, and to operate the GDF in a "tortious and negligent manner." (Doc. 1-3) at 8, ¶ 168. "A civil conspiracy is a 'combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Seeds v. Lucero*, 2005-NMCA-067, ¶ 12, 113 P.3d 859 (quoting *Las Luminarias of the N.M. Council of the Blind v. Isengard*, 1978-NMCA-117, ¶ 5, 587 P.2d 444). Establishing a claim of civil conspiracy requires "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Id*. at ¶ 18 (quoting *Silva v. Town of Springer*, 1996-NMCA-022, ¶ 25, 912 P.2d 304) (internal quotation marks omitted).

Turning to the first element of conspiracy, Plaintiff contends that Defendant McKinney, former City Manager Ustick, and City Councilor Cecil Garcia "harbored violent and punitive motivations in the operation of the [GDF]."[4] (Doc. 104) at 9; (Doc. 105) at 8. Under the second and third elements for conspiracy, Plaintiff argues that GDF was operated in violation of the New Mexico Procurement Act and the JPAA, and that due to this illegal operation, Mr. Lee died. (Doc. 104) at 9-10; (Doc. 105) at 8.

---

[4] Neither Ms. Ustick nor Ms. Garcia is a party to this case.

It is unclear from Plaintiff's Responses exactly what unlawful acts Plaintiff alleges Defendants performed or sought to perform. In any case, Defendants are subject to immunity from these claims unless immunity is waived under the NMTCA. *Seeds*, 2005-NMCA-067, ¶ 16 ("[A] public employee's conspiratorial and wrongful intent does not remove employee's immunity when employee's acts are within scope of his or her duties."). The Court found that Sections 41-4-6 and 41-4-9 do not waive immunity for Defendants' actions. Therefore, because Defendants are immune from suit, the Court will grant summary judgment as to the Count V civil conspiracy claim.

B. *Federal Claims*

1. *Count VI: Section 1983 Claims*

Lastly, Plaintiff states that the City Defendants violated Mr. Lee's civil rights in contravention of 42 U.S.C. § 1983.[5] Plaintiff raises a municipal liability claim against the City Defendants and an individual liability claim against Defendant McKinney as the Mayor of the City of Gallup. (Doc. 1-3) at 10-13. Specifically, Plaintiff alleges that Defendant McKinney, Ms. Ustick, and Ms. Garcia "urged intentional punitive and even violent actions by the City of Gallup Police upon intoxicated persons, which the City of Gallup police properly resisted." (Doc. 104) at 10. Plaintiff maintains that the City Defendants "selected an operator of [GDF] where acutely intoxicated persons were to be lodged, and held against their will even upon regaining the ability to care for themselves, with utter and complete indifference to the ability of

_____

[5] In his Response to the County Defendants' Motion for Summary Judgment, Plaintiff alleges that both the City and County Defendants deprived Mr. Lee of his civil rights. (Doc. 105) at 9. However, based on Plaintiff's Partial Response to County Defendant's Motion to Dismiss, the Court dismissed any Section 1983 claim against the County Defendants. (Doc. 27). Because the claims were previously dismissed by the Court, the Court will not address any Section 1983 claims against the County Defendants in reference to the Motions for Summary Judgment.

their chosen operator to operate it." *Id.*  Finally, Plaintiff argues that the City Defendants were deliberately indifferent to his medical needs.  (Doc. 104) at 10.

        *a.  Section 1983: Municipal and Individual Liability*

A municipality can only be liable under Section 1983 if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  In *Pembaur v. City of Cincinnati*, the United States Supreme Court further developed the *Monell* rule, stating that "[t]he 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  475 U.S. 469, 479 (1986).  The Supreme Court recognized, however, that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."  *Id.* at 480.  The Supreme Court emphasized that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."  *Id.* at 481.  Nonetheless, "[i]f the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood."  *Id.*

In further defining the contours of the rules regarding municipal liability, the Supreme Court has noted that "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).  In this context, "when an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an

end to the question." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). For a claim involving a single incident, "the plaintiff must show that the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Hollingsworth v. Hill*, 110 F.3d 733, 743 (10th Cir. 1997) (quoting *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996)) (internal quotation marks omitted).

The Tenth Circuit has held that "[a] plaintiff suing a municipality under Section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694).

Plaintiff argues that the City Defendants violated Mr. Lee's right to be free from cruel and unusual punishment. (Doc. 1-3) at 10-11. Given that the City Defendants did not operate the GDF, it is unclear whether any City employee actually violated Mr. Lee's constitutional rights. However, the Court will address the question of whether a municipal policy was a moving force behind a theoretical constitutional deprivation. Specifically, Plaintiff does not allege an "official policy" that deprived Mr. Lee of his constitutional rights. Plaintiff only alleges that the City Defendants "selected an operator" of GDF that was not able to properly operate the facility. Because Plaintiff has not shown that the requirements of a Section 1983 municipal liability claim are met, the Court will grant summary judgment on that claim.

Plaintiff also claims that Defendant McKinney is individually liable for deprivations of Mr. Lee's constitutional rights. In depositions, the former Chief and Deputy Chief of the Gallup Police Department stated that Defendant McKinney, the city manager, and the city attorney directed the Gallup Police Department to "make it uncomfortable" and "put pressure" on

intoxicated individuals in the City of Gallup by moving them into detox facilities.  (Doc. 104-1) at 1:1-2:6, 13:2-9, 15:2-12; (Doc. 104-2) at 10:2-22, 12:3-5.

While it may be Defendant McKinney's policy on behalf of the City to keep intoxicated individuals off of the city streets, a New Mexico State Police patrolman picked up and transported Mr. Lee to GDF.  Furthermore, although Plaintiff specifically states that Defendant McKinney pushed the City of Gallup Police to take action against intoxicated individuals, the City of Gallup Police were not involved in the interaction with Mr. Lee.  Indeed, Plaintiff states that the "City of Gallup [P]olice properly resisted" Defendant McKinney's policy; therefore, his policy could not be the "moving force" behind any constitutional deprivation.  Additionally, Plaintiff has not shown whether the employees at GDF who violated Mr. Lee's rights were acting pursuant to an official City policy promulgated by Defendant McKinney.  Plaintiff established that Defendant McKinney wanted intoxicated individuals out of the City of Gallup, but has not shown that Defendant McKinney's policy influenced employees at GDF in their interactions with Mr. Lee.  For these reasons, the Court will also grant the City Defendants' Motion for Summary Judgment as to the Section 1983 claim against Defendant McKinney.

### b.  Section 1983: Deliberate Indifference to Medical Needs

Plaintiff alleges that the City Defendants were deliberately indifferent to Mr. Lee's medical needs.  To show deliberate indifference, a plaintiff must establish "an excessive risk to [ ] health or safety" was known and disregarded and the delay resulted in substantial harm.  *Id.* (quoting *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000)) (internal quotation marks omitted).  To be held liable for deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference can be demonstrated by showing that medical care was intentionally denied or delayed. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

The United States Supreme Court established a two-pronged test for deliberate indifference claims, such that a plaintiff must satisfy an objective and a subjective prong. *Farmer*, 511 U.S. at 837-40. The objective prong considers the severity of a plaintiff's need for medical care, while the subjective prong considers the defendant's state of mind. *Sealock*, 218 F.3d at 1209. Death satisfies the objective component. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Under the subjective prong, the question is whether Plaintiff has "present[ed] evidence of the [Defendants'] culpable state of mind." *Estate of Booker*, 745 F.3d at 430 (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)) (internal quotation marks omitted).

Looking at the subjective prong, Plaintiff must show that City Defendants knew Mr. Lee "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id.* at 1089 (quoting *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006)) (internal quotation marks omitted). In this case, the City Defendants did not know Mr. Lee faced a substantial risk of harm because they did not participate in the day-to-day operation of GDF. None of the City Defendants were involved in Mr. Lee's transport to GDF or the decisions regarding his care at GDF. Plaintiff is unable to show that the City Defendants violated the second prong of the deliberate indifference test. Therefore, the Court will grant the City Defendants' Motion for Summary Judgment on the deliberate indifference claim. Consequently, summary judgment will be granted as to Count VI in its entirety.

*V. Conclusion*

In light of the foregoing, the Court grants the Motions for Summary Judgment and will dismiss Civ. No. 15cv405 KG/KBM in its entirety.

IT IS ORDERED that

(1) Defendant Board of County Commissioners for the County of McKinley, Genevieve Jackson, Bill Lee, and Sara A. Keelers' the County Defendants' Motion for Summary Judgment and Their Memorandum in Support Thereof (Doc. 87) is GRANTED;

(2) Defendant City of Gallup, Jackie McKinney, George Kozeliski, and Patty Holland's City Defendants' Motion for Summary Judgment (Doc. 90) is GRANTED;

And Civ. No. 15cv405 KG/KBM will be DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE